## CUDD v. CALVERT.

1. INJUNCTION—PRACTICE.—When an action is brought for the *sole* purpose of obtaining a permanent injunction, and the facts as alleged in the complaint, if true, present a proper case for injunction, a temporary injunction should not be dissolved on motion on affidavits.

2. EXCEPTIONS—APPEAL—"CASE."—In order to base an exception on the point that the Circuit Judge erred in dissolving a temporary injunction on motion. it is not necessary to show affirmatively in "Case" that such point was made before him.

3. RAILROAD BONDS—SPARTANBURG.—ORDINANCE OF CONSTITUTIONAL CONVENTION relating to railroad bonds of Spartanburg only relieved the legislature of restraints put on it by that body, and did not purport to give it power to legislate facts into existence.

4. VALIDATING ACT.—THE ACT OF 1896 (22 Stat., 316), is not a validating act, nor was it passed in pursuance of the authority conferred by ordinance of Constitutional Convention. Validating act defined.

Before TOWNSEND, J., Spartanburg, September, 1898. Reversed.

Action for injunction by J. N. Cudd *et al. v.* Arch. B. Calvert, mayor of Spartanburg, *et al.*, on the following complaint:

The plaintiff, complaining of the defendant, alleges :

1. That the city of Spartanburg is a municipal corporation duly chartered and existing under and by virtue of the laws of this State, and as such is governed by a mayor and six aldermen; and that 'the above named J. R. Bain, J. O. Erwin, S. T. McCravy, James Cofield, T. L. Lytle, and J. D. Boyd, are the duly elected and qualified aldermen of said city, and as such constitute and are "known as the city council of Spartanburg," and are duly authorized and empowered "to sue and be sued, plead and be impleaded."

2. That they, the said plaintiffs, own property in the city of Spartanburg, which said property is assessed for the payment of taxes; that the issues involved are of common and general interest to all taxpayers of the city of Spartanburg, and as taxpayers in said city they sue for themselves and all the other taxpayers of said city who have the same common and general interest.

3. Plaintiffs allege that, on the 8th day of June, 1877, the General Assembly of the State of South Carolina adopted an act entitled "An act to incorporate the Spartanburg and Rutherford Railroad," and in said act gave authority for the organization of a railroad company to be known as the Spartanburg and Rutherford Railroad Company, for the single purpose of constructing a railroad from the city of Spartanburg to the North Carolina line in the direction of Rutherfordton, in the State of North Carolina. And said company was permitted to organize as a corporation whenever the sum of $10,000 was subscribed to its capital stock, and was to enjoy such rights and privileges as were by law conferred upon the Northeastern Railroad Company by. "their" original charter, but was not to be exempt from taxation. And on the 9th day of February, 1882, the General Assembly enacted a further act entitled "An act to amend an act to incorporate the Spartanburg and Rutherfordton Railroad Company, by reducing the shares to $50 per share, and authorizing cities, towns and counties to subscribe to the capital stock of said company," all of which said several

enactments are specially pleaded as a part of this complaint.

4    And plaintiffs allege that a petition was presented to the city of Spartanburg prior to November 15th, 1882, wherein the petitioners set forth that being desirous of forming a railroad connection with the town of Rutherford-ton, in the State of North Carolina, it be submitted to the voters of said city to subscribe by an *ad valorem* tax the sum of $25,000, to be expended in Spartanburg in the construc-tion of a railroad between the points indicated. And there-upon the city council of Spartanburg ordered that an elec-tion be held for such purpose on November 16th, 1882, copies of which said petition and order are thereto appended as exhibits "A" and "B," respectively, of this complaint.

5. And plaintiffs allege that an election was held on the day designated in the notice thereof; but they have no know-ledge or information sufficient to form a belief whether a majority of the voters of the city of Spartanburg voted in favor of said subscription or not, and they therefore deny that such majority did so vote. And plaintiffs allege, on information and belief, that the election so held on the 16th day of November, 1882, was so held without authority, inas-much as no sufficient petition had been presented to the city council authorizing it to order the same. The plaintiffs further allege that no such company as the Spartanburg and Rutherfordton Railroad Company was ever incorporated by the General Assembly of the State, or otherwise; and they further allege that no act to amend an act entitled "An act to amend an act to incorporate the Spartanburg and Ruther-ford Railroad," as set forth in the order for an election, was ever enacted by the General Assembly of this State.

6. And plaintiffs further allege that the city council of Spartanburg, without authority, by its ordinance adopted on the 2d day of July, 1898, have directed that bonds of the city of Spartanburg to the amount of $25,000, bearing inter-est at the rate of seven per cent. per annum, be now exe-cuted, issued and delivered to the proper authorities of the alleged Spartanburg and Rutherfordton Railroad Company,

or to some other company with which it may become consolidated, when it shall have built a railroad into the city of Spartanburg from the North Carolina line, or shall have given a guarantee so to do, a copy of said ordinance being hereto annexed, marked exhibit "C," and made a part of this complaint.

7. And plaintiffs allege and aver that said proposed execution and issue of bonds of the said city of Spartanburg is unauthorized and contrary to law, and will work a wrongful and injurious burden to the taxpayers of said city, for that: *a.* The charter of the Spartanburg and Rutherford Railroad did not authorize such subscription by the city. *b.* Because the said Spartanburg and Rutherford Railroad was never organized as required by its charter, and did not commence work within two years, so as to preserve its chartered rights, and said charter expired before 1882. *c.* Because the act of February 9th, 1882, did not purport to incorporate a railroad company known as the Spartanburg and Rutherfordton Railroad Company, nor did it purport to amend the charter of the Spartanburg and Rutherford Railroad, which was then extinct. *d.* Because if legislative authority ever existed to authorize a subscription as described, such authority gave the right to subscribe to a railroad company building a line from Spartanburg to the North Carolina line in the direction of Rutherfordton, North Carolina, and no other, the said city council is without authority to divert said subscription, even if made. *e.* Because no authority has ever been conferred by a vote of the people upon the city council of Spartanburg to subscribe and issue seven per cent. bonds to the amount of $25,000 to aid any railroad, nor has any such request to issue bonds been petitioned for or submitted to a vote of the people. *f.* Because no railroad company under the name of the Spartanburg and Rutherfordton Railroad Company has, or ever had, any legal existence in this State; and the issue to any persons claiming to be officers or agents of such a corporation would work an irreparable wrong and hurt to the taxpayers of said city. *g.*

Because said city council in and by said ordinance directs the issue of said bonds upon a guarantee that some railroad from some point in the direction of North Carolina will be built; and for which issue no authority, pretended or real, exists or has ever existed. *h.* Because, as plaintiffs are informed and believe, the said subscription, either to the alleged Spartanburg and Rutherfordton Railroad Company, or to any other railroad company, has never been made by the said city council, and that no stock has ever been issued or attempted to be issued, to said city for any such subscription. *i.* That if said subscription was ever made, it was without authority, and was made payable in money and not in bonds, and at time when there was no such railroad company as now claimed in existence to which said subscription could legally have been made, and such promise, if ever made, was made more than six years ago, and is now barred by the statute of limitations, and the city council is without power or authority to revive the same by a new promise. *j.* That if said subscription in bonds to the capital stock of the said Spartanburg and Rutherfordton Railroad Company was ever authorized by the voters of this city to be made, or if the same was ever made by the authorities of the said city, the same was so authorized and made upon the condition that a railroad would speedily be located and constructed from the city of Spartanburg to the North Carolina line, in the direction of the town of Rutherfordton, N. C., which condition has never been complied with or performed, nor, as plaintiffs are informed and believe, is there any intention to comply with or perform the same, but that on the contrary, the said enterprise has long since been abandoned, and there is now no intention on the part of the alleged Spartanburg and Rutherfordton Railroad Company to locate or construct a railroad from this city to the North Carolina line in the direction of Rutherfordton, N. C. *k.* That more than fifteen years have elapsed since any subscription to the said alleged railroad company was authorized to be made by the voters of this city, and if the power to make the same

ever existed, or if the right to demand that it be made ever existed, the same has been lost by laches by waiver of said right, and the power to make it is barred.

8th. And plaintiffs aver, on information and belief, that it is the intention of the said city council to execute and issue the bonds described in their said ordinance, nominally to the supposed Spartanburg and Rutherfordton Railroad Company, which has never been located, and of which there is no intention to locate or construct, but ultimately and in fact, by some attempted consolidation or agreement between the alleged Spartanburg and Rutherfordton Railroad Company and the Ohio River and Charleston Railway Company, which has legislative authority to construct a line of railroad from Blacksburg, S. C., to the city of Spartanburg, in a direction and between points wholly different from the originally chartered Spartanburg and Rutherford Railroad, and in a direction and between points wholly different from the intended route of any railroad to the capital stock of which the voters of this city may have authorized the authorities to subscribe to.

9th. That the points between which it is proposed to apply the said bonds in constructing a railroad is already connected by a line of railroad which has long been in operation, and between which points there are now several trains both freight and passenger running.

10th. And plaintiffs aver that great wrong and injury will be done themselves and the other taxpayers of this city if the bonds of said city are issued as in said ordinance is provided; and great and useless burdens will be imposed thereby; and as plaintiffs are without remedy to prevent such wrong and injury save by the intervention of this honorable Court, they demand judgment for relief: First. That the city council of Spartanburg, and the mayor and aldermen and the clerk and treasurer thereof, be enjoined and restrained by the order of this Court from printing, engraving, executing or issuing the bonds of any denomination purporting to be the bonds of the city of Spartanburg,

to the pretended Spartanburg and Rutherfordton Railroad
Company, or to any company which the said pretended rail-
road company may attempt to combine or consolidate with,
or to any person or persons for the use of such pretended
consolidated company.

   The ordinance referred to in the complaint is as follows:
   NOTICE.—Whereas, an election was held in the city of
Spartanburg on the question of the subscription of the sum
of $25,000 to the capital stock of the Spartanburg and
Rutherfordton Railway Company; and whereas, a majority
of the qualified electors voted in favor of said subscription,
and the same was thereupon made; and whereas, said sub-
scription was made payable in bonds of the city of Spartan-
burg, as authorized by the act of the legislature; and
whereas, an ordinance of the Constitutional Convention,
passed on the 20th day of November, 1895, provided that
the General Assembly might enact such laws as were neces-
sary to validate and carry into effect the subscription to the
capital stock of the Spartanburg and Rutherfordton Rail-
road Company, and validate and authorize the issue of
bonds of the city of Spartanburg in payment of the said
subscription; and whereas, by the terms of said act the
organization of the Spartanburg and Rutherfordton Rail-
road Company, the acts of incorporation and all acts
amendatory thereto was validated and confirmed.   Now, be
it ordained by the mayor and aldermen of the city of Spar-
tanburg, that the said subscription of $25,000 to the capital
stock of the Spartanburg and Rutherfordton Railroad Com-
pany is hereby ratified and confirmed.   That in accordance
with the authority given by the election duly held, the ordi-
nance of the Constitutional Convention and the act of 1896,
the said city of Spartanburg will cause to be issued and
executed $25,000 of seven per cent. coupon bonds, payable
in sixteen, twenty and twenty-four years after the date
thereof.   That the coupons shall be made payable semi-
annually on the first day of January and July of each year,

payable at the city treasurer's office in the city of Spartanburg; the bonds to bear such date as may be fixed and agreed upon by the city council and the proper authorities of the Spartanburg and Rutherfordton Railroad Company. That said bonds when printed and executed will be delivered to the proper authorities of the Spartanburg and Rutherfordton Railroad Company: Provided, That said bonds shall not be delivered to the said railroad company, or to any other person or company, or to any other person or corporation for it, until the said company, or some other company with which it shall become consolidated, shall have built and constructed a railroad into the city of Spartanburg from the direction of the North Carolina line, or shall have given sufficient guarantee to the committee herein provided for, that said road will be constructed, said guarantee to be approved by city council. Ordained further, that the faith and credit of the city is hereby pledged to the payment of the interest and principal of the said bonds, as they may fall due, and that an annual levy be made on all taxable property in said city to raise the amount sufficient to pay the interest upon said bonds, and also the principal as it may mature. Ordained further, that the mayor will appoint a committee consisting of not less than two aldermen, who shall be charged with the special duty of printing said bonds and having them executed by the proper authorities. The said committee being authorized to select designs and make contracts for printing, and to do any and all acts necessary to carry out the object of this ordinance. Done and ratified in council assembled, this 2d day of July, 1898. Arch. B. Calvert, mayor.

The important portion of the Circuit decree is as follows:

After due consideration of the law, and the evidence submitted before me, I think the temporary injunction heretofore granted herein should be dissolved. In my opinion, the defendants are simply proposing to do what a valid law of the State requires them to do, and I do not think that the

disposition which they propose to make of the bonds about
to be issued would be a diversion thereof, or would be in any
other way illegal.   None of the attacks made on the pro-
ceedings under which the bonds were originally voted, nor
on the organization of the railroad company in whose aid
they are about to be issued, nor on the power of the city
council to issue and dispose of them as proposed, can in my
judgment be sustained.   I regard the original petition pre-
sented to the city council as in proper form.   The expres-
sion "ad valorem" therein found refers merely to the matter
in which the petitioners thought the tax should be levied, in
order to pay the principal and interest on the subscription
for which they petition to be allowed to vote, and may just
as well have been omitted from the petition, as the law
would have followed that course of taxation in any event.
I can find nothing wrong about the order issued by the city
council through J. S. R. Thompson, as mayor, for the elec-
tion to be held.   It refers unmistakably to the act of June
8th, 1877, which chartered the Spartanburg and Ruther-
fordton Railroad Company, and sets out intelligibly and
plainly the object of the order, so that no one could be mis-
taken as to the nature of the election held.   The last men-
tioned act (February 9th, 1882), does not style the com-
pany, the Spartanburg and Rutherford Railroad Company,
as it is styled in the act of June 8th, 1877, but it is clear that
the two names refer to the same company, and the difference
does not amount to even an irregularity or discrepancy,
because it is plain that the legislature intended to make that
change in the name of the company without the use of the
formal words to express it.   As to the point that the act of
February 9th, 1882, in using the words, "It shall and may
be lawful for any city, town or county interested in the con-
struction of said railroad to subscribe to its capital stock
such sum as a majority of their voters may authorize,"
excluded the city of Spartanburg, the answer is, it seems to
me, that the circumstances in this case make the said act a
special one in every respect; so that to my mind the ques-

30—54

tion of the effect of legislation upon the special act charter-
·ing the city of Spartanburg and limiting its powers as to
increasing its bonded indebtedness, does not arise.    The act
is a special one, and directed specially to such cities or towns
as were interested, and Spartanburg was probably more
interested than any other city or town.    It would be too
great a stretch of statutory construction to except Spartan-
burg; and I, therefore, conclude and find that Spartanburg
was included in said act, and that the power was thereby
granted to vote for a subscription to the capital stock of said
road.    The minute books of the city council show unmis-
takable evidence that the subscription was made.    There
was certainly no evidence before me to contradict this show-
·ing.    It may not only be assumed, but the affidavits before
me show, that the city council being specially charged with
the performance of this act, provided all antecedent steps
were completed—had the proper evidence before it when the
subscription was made, that a majority of the qualified
voters of the city had voted for the subscription.    There is
the affidavit of George W. Nicholls, Esq., showing that the
company was actually organized in 1883, and that he was
then elected, and has ever since been one of its directors.
Then, too, the affidavit of Arch B. Calvert, Esq., shows that
he is now president of the said company; so that I conclude
and find, that the city of Spartanburg had the right to
·vote—that the petition and order for the election were in
proper and legal form as required by law—that the sub-
scription was voted by a majority of the qualified voters of
the said city, and that the subscription was afterwards act-
ually made by the city authorities to the railroad company,
which then was and is now a legally constituted corporation
under the laws of the State of South Carolina.    But it is
contended that even if this be so, the subscription is illegal
and void, because the purpose for which the bonds are to be
issued is not a corporate purpose; because the railroad com-
pany had become extinct by not using its franchises; because
the subscription is barred by the statute of limitations, and

by laches. I do not think that the positions can be sustained. Even if there had before been any merit in them, the validating act of 1896—22 Stat., 316—permitted by special ordinance of the Constitutional Convention, cures all defects here complained of. Plaintiffs contended that this act is unconstitutional, because it refers to more than one subject, and because the legislature assumed judicial powers in enacting it and legislated facts into existence. According to my view of this case, the act so attacked is not amenable to these objections. It is true, that the preamble to said act does recite certain facts as existing, but the preamble forms no part of the act, and if it does, the facts there recited are the facts which I find did then exist. Therefore, in the light of the ordinance of the Constitutional Convention ('Constitution, page 108), finding as a fact that a subscription of $25,000 to the capital stock of the Spartanburg and Rutherfordton Railroad Company had been "voted for and authorized by the qualified voters of the city of Spartanburg," and of the said validating act, I conclude that the legislature did no more than declare the law in reference to facts in existence and within their knowledge when they enacted that statute, and that said act, so far as objections to it go, is constitutional, and validates and confirms all that had previously been in promotion of the construction of railroad communication between Spartanburg, S. C., and Rutherfordton, N. C., under the act of June 8th, 1877, and the act or acts amending the same, and styling the said company in the later act the Spartanburg and Rutherfordton Railroad Company; and that the said city council of Spartanburg have the right now and are required by law to execute and deliver the said bonds in accordance with their said ordinance. I find further, that said act does not refer to more than one subject, to wit: The promotion of the construction of said railroad. It is, therefore, constitutional, so far as that objection goes. As to the point made that the subscription is barred by the statute of limitations, I do not think the statute applies in such cases; but if

I am wrong, a sufficient answer, it seems to me, is that the city council stands as the trustees of the people, constituted a trustee by a majority of the qualified electors, and in that capacity have the right to keep alive the promise made, and they are keeping it alive by acknowledging it, and attempting to pay it with the bonds about to be issued. There is no evidence that the original trust thus created has ever been revoked by a majority of the qualified electors of the city of Spartanburg. It seems to me, therefore, that on none of these grounds on which the plaintiffs ask a temporary injunction, can their motion prevail.

It is, therefore, ordered, adjudged and decreed, that the temporary injunction heretofore granted in this cause, restraining the defendant, the city council of Spartanburg, from issuing and delivering bonds of the city in payment of the subscription hereinabove referred to, be and the same is hereby dissolved.

*Mr. Jas. F. Hart,* for appellant, cites : *The assumption of facts in the act of 1896 is unwarranted:* 51 N. Y., 513; 64 N. Y., 91; 62 Ill., 170. *Legislature is without power to compel a corporation to contract a debt for such purpose:* 2 Am. R., 278; 13 Am. R., 480; 15 Am. R., 202; 98 Am. Dec., 664; 47 Am. Dec., 153; 115 U. S., 673. *Retroactive statute affecting vested right is void:* 1 S. C., 155; 71 N. Y., 520; 92 U. S., 289; 2 Am. Rep., 217; 134 U. S., 303; 49 S. C., 443. *When statute confers power to incur debt, the provisions should be strictly followed:* 27 Am. Rep., 470. *Voting authority to subscribe is not subscribing:* 22 How., 364; 97 U. S., 83; 3 Strob., 245. *Subscription, if a contract, is barred, and such bar may be pleaded in equity:* 6 Rich. Eq., 234. *City authorities cannot divert the application of these bonds:* 97 U. S., 83; 92 U. S., 569; 128 U. S., 125; 57 Mo., 445; 59 Mo., 281. *Change in the route works forfeiture of the right to aid:* 51 Cal., 328; 6 Nev., 68; 64 Mo., 30; 3 Ill. App., 356; 22 Ind., 88; 76 Ill., 101; 21 Wall., 317; 76 No. Ca., 489. *Appealable error to determine facts alleged in complaint on affidavits:* 51 S. C., 433.

Mr. C. P. Sanders, also for appellants, cites: *Error to dissolve temporary injunction on affidavits:* 51 S. C., 435. *There was no legally organized railroad to which city could subscribe:* 16 Stat., 272; 3 Strob., 247; 112 U. S., 327; 19 Wall., 247. *Statutory requirements were not followed, and subscription cannot be enforced:* 1 Wall., 39; 10 Wall., 676.

*Messrs. Bomar & Simpson,* and *Munro & McCravy,* contra, cite: *Act of 1896 not invalid, because relating to more than one subject:* 23 S. C., 427. *Acts of corporation in abuse or excess of corporate powers can only be assailed by State:* 20 Am. & Eng. R. R. Ca., 17; 100 U. S., 55. *Finding by council that petitioners were voters is sufficient:* 47 S. C., 418. *Act of 1896 is an enabling and a validating act:* 30 S. C., 584, 587. *And the legislature could so validate irregular acts:* 20 S. C., 586; 10 Rich., 499; 49 Ill., 416.

March 23, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. By an act approved 8th June, 1877, 16 Stat., 272, it was declared, amongst other things, in section 1, "that for the purpose of constructing a railroad from the town of Spartanburg to the North Carolina line, in the direction of Rutherfordton, N. C., a company may be formed with a capital stock of not more than $500,000, to be known as the Spartanburg and Rutherford Railroad Company," &c. By the 2d section, commissioners were appointed to open books of subscription for the purpose of raising the capital stock of said company. By the 3d section, it is provided that when the sum of $10,000 shall have been subscribed to the said capital stock, the company may be organized. By the 9th section, the company is authorized "to unite and consolidate with any other railroad now built, or hereafter to be built, in this State or in the State of North Carolina," &c. On the 9th of February, 1882, an act was approved, entitled "An act to amend an

act entitled 'An act to incorporate the Spartanburg and Rutherfordton Railroad,' approved June 8th, 1877, by reducing the shares to $50 per share, and authorizing cities, towns and counties to subscribe to the capital stock of said company." (17 Stat., 934.) By the 2d section of said act, it is declared that "It shall and may be lawful for any city, town or county interested in the construction of said road to subscribe to its capital stock such sum as a majority of their voters may authorize, the * * * proper authorities of such city * * * to subscribe, which subscription shall be made in seven per cent. coupon bonds * * * said bonds to be made payable in equal instalments of sixteen, twenty, twenty-four and twenty-eight years after the date thereof, * * *." It will be observed that this act purports to amend an act to incorporate the Spartanburg and Rutherfordton Railroad, and we are unable to find that any such act was ever passed, though we do find that an act had been passed, as set out above, incorporating the Spartanburg and Rutherford—not Rutherfordton—Railroad Company. But as we do not propose, at this stage of the case, to make any point as to this variation in the title of the company whose charter it was proposed to amend, we shall assume, for the purpose of the present inquiry, that the legislature intended, by the act of 9th of February, 1882, to amend the charter of the Spartanburg and Rutherford Railroad Company, the incorporation of which was authorized by the act of 8th of June, 1877, above cited. In the act of 1880—17 Stat., 434—incorporating the city of Spartanburg, it is provided: "That the bonded debt of said city shall in no way be increased without an act of the General Assembly authorizing the same, and without the consent of two-thirds of the qualified electors of said city being first had by an election for that purpose," and the same provision is carried into the act, approved 4th of January, 1894—21 Stat., 686— amending said charter. At some time—prior to the 2d of October, 1882—a petition, without date, was presented to the city council of Spartanburg, in these words: "We, the

'undersigned citizens of the city of Spartanburg, S. C., being desirous of forming a railroad connection with the town of Rutherfordton, N. C., respectfully request- that it be submitted to the voters of said city to subscribe by an *ad valorem* tax the sum of $25,000, to be expended in the construction of a railroad between the points above indicated." Upon receipt of such petition, the mayor of said city, on the 2d day·of October, 1882, issued his order, directing an election to be held on the 16th of November, 1882, for the purpose of determining the question whether such subscription to said railroad should be made.  Accordingly an election was held at the time appointed, and on the 1st day of December, 1882, the managers of said election made their return, showing that the result was in favor of such subscription by a majority of 319 votes.  This return was received by the city council, who declared the result of the election to be in favor of subscription.  No further action appears to have been taken by the city council upon the subject until 2d day of July, 1898, when they passed an ordinance, a copy of which is set out as an addendum to the "Case," which should be incorporated by the Reporter in his report of this case—which ordinance provided for the issue of bonds of the city of Spartanburg to the amount of $25,000, to "be delivered to the proper authorities of the Spartanburg and Rutherfordton Railroad Company."  In the meantime, however, the Constitutional Convention, which assembled in the year 1895, passed an ordinance providing, amongst other things: "That nothing in the Consitution ordained and established by the people of South Carolina, now in Convention assembled, shall prohibit the General Assembly * * * from enacting such laws as may be necessary to validate and carry into effect the subscription by the city of Spartanburg to the capital stock of the Spartanburg and Rutherfordton Railroad Company, heretofore voted for and authorized by the qualified voters of the city of Spartanburg, and validate and authorize the issue of the bonds of  said city in  payment of  the same."  (Con.

1895, p. 107.) In pursuance of this ordinance, as it is
claimed by the city council of Spartanburg (but whether
such claim is well founded, is one of the questions in this
case), the General Assembly passed an act, approved 25th
of February, 1896—22 Stat., 316—entitled "An act to vali-
date and confirm certain acts of the Spartanburg and Ruth-
erfordton Railroad Company, and the subscription of the
city of Spartanburg to the capital stock thereof, and to
authorize bonds of said city to be issued in payment of said
subscription." The special provisions of this act need not
now be more particularly referred to. On the ...... day
of July, 1898, the plaintiffs, as taxpayers in the city of Spar-
tanburg, on behalf of themselves and all other taxpayers in
said city, commenced this action, for the *sole* purpose of
restraining and enjoining the city council of Spartanburg
from issuing the bonds as provided for in the ordinance of
said city council above referred to. The grounds upon
which the plaintiffs base their claim for an injunction are
fully set out in their complaint, which should be incorpo-
rated in the report of this case. Very soon after the action
was commenced, the plaintiffs applied for and obtained from
his Honor, Judge Townsend, an order, bearing date 25th of
July, 1898, restraining and enjoining the defendants from
issuing said bonds until the further order of the Court.
After the answer was filed, the defendants gave notice of a
motion, to be made before Judge Townsend on the 12th of
August, 1898, "on the pleadings and whole record herein,
including the affidavit hereto attached, and such affidavits as
we may hereafter serve, for an order dissolving the prelimi-
nary injunction herein, and for such other and further relief
as may be proper," upon the grounds stated in said notice.
This motion came on to be heard by Judge Townsend on the
16th of August, 1898, as we infer from a statement made in
his decree, and on the 15th of September, 1898, he rendered
his decision dissolving the temporary injunction previously
granted. From this plaintiffs appeal upon the several

grounds set out in the record, which, under the view we take of the case, need not be specifically stated here.

From an examination of the decree of Judge Townsend, it is very manifest that he considered and passed upon the whole case, just as if it had been heard by him, regularly, upon the merits. For this reason, a copy of the decree should be incorporated in the report of this case. It seems to us that where, as in this case, the action is brought solely for the purpose of obtaining an injunction, and where, if the facts alleged in the complaint are found to be true, a proper case for injunction would be presented, it is error to dissolve a temporary injunction upon a mere motion, heard upon affidavits, as that would deprive the plaintiff of his legal right to have the facts determined in the mode prescribed by law, instead of by affidavits—a most unsatisfactory mode of eliciting truth. Indeed, the practical result, in a case like this, would be to dismiss the complaint upon a mere motion, heard upon affidavits, without any opportunity being afforded the plaintiff to have the facts upon which he bases his claim for relief determined in the mode prescribed by law. For if in this case the injunction should be dissolved, there would be nothing to prevent the issue of the bonds before the case could be heard on its merits, and if the bonds passed into the hands of innocent holders without notice, as they might and probably would do, then the controversy would become absolutely useless. If, therefore, the facts alleged in the complaint can be established upon a trial on the merits, where the witnesses can be subjected to examination and cross-examination, then we do not think it can be denied that the plaintiffs would be entitled to the injunction prayed for. The authorities cited by appellants in their argument sustain the view we have taken. 2 High on Inj., 3d edit., secs. 1509, 1511 and 1512; *Seabrook* v. *Mostowitz,* 51 S. C., 433. Exceptions 13, 15 and 21, raising this point, must be sustained.

It is contended, however, in the argument here, that the question which we have been considering was not made be-

fore the Circuit Judge, and, therefore, cannot be raised here. In the first place, we remark that the record before us does not show that such question was not raised before the Circuit Judge. True, it does not appear to have been considered in the decree of the Circuit Judge; but it frequently happens that the Circuit Judge does not, in rendering his judgment, consider or rather pass upon all the points raised by counsel, as he may overlook some, or disregard others, as in his judgment not pertinent to the case in hand. But aside from this, appellants, certainly, could not know, before the decree was filed, that the Circuit Judge would go into a consideration of the whole case, just as if it had been heard on the merits; and, therefore, the only mode by which the question could be brought before this Court was by the exceptions taken to the decree. It is very different from a case in which an appeal is based upon exceptions imputing error in the omission to charge certain propositions, where there has been no request to charge such propositions. Indeed, in a case like the present, we do not see how this Court could ascertain what points had been made below, unless we had the whole argument on Circuit before us, or the fact is made to appear by admissions of counsel, which is not the case here.

This would be conclusive of the question before us; but perhaps we should notice the effect of the ordinance of the Constitutional Convention, and of the act of 1896, above referred to, as it seems to be argued that the facts in this case are concluded by such ordinance and act.

As to the ordinance, it is very manifest that its only purpose and effect was to relieve the General Assembly from any restraints imposed upon that body by the provisions of the Constitution of 1895, with respect to the subject referred to in the ordinance. The practical effect and manifest object of the ordinance was simply to authorize the General Assembly, if a subscription to the capital stock of the Spartanburg and Rutherfordton Railroad Company, which had been authorized by a vote of the qualified electors of

said city, had been made, to validate the same, and authorize the issue of bonds in payment of such subscription. But it does not declare, or purport to declare, that the General Assembly shall have power to legislate facts into existence, which never did exist. As to the act of 1896, which defendants claim was passed in pursuance of said ordinance, it undertakes to recite in its preamble certain facts, and in the body of the act the existence of the facts thus recited are assumed, and upon such assumed facts (which it had no power to do, Cooley on Const. Lim., 2d edit., 96), it proceeds to declare "that the election heretofore held in the city of Spartanburg upon the question of the subscription by the said city of the sum of $25,000 to the capital stock of the Spartanburg and Rutherfordton Railroad Company, is hereby declared to have been legally held, and the subscription then made by said city to the capital stock of said railroad company be and the same is hereby validated and confirmed, and declared to be a binding subscription by said city, and the proper officers of said city are hereby authorized and required to issue bonds in payment of said subscription," &c. If the facts, as recited in the preamble and body of this act, be true, then it is difficult to conceive any necessity for any validating act. Indeed, we do not see how the act of 1896 can be regarded as a validating act in any proper sense of those terms. The scope and purpose of a validating act is to perfect some transaction which, from some irregularity or informality, is not complete, or to confirm a contract creating a *moral* obligation, but which from some irregularity or informality lacks the force and effect of a legal obligation. A striking example is where a municipal corporation enters into a contract which, at the time, it had no power to make. If the contract be such an one as the legislature might originally have authorized, then it may be validated and confirmed by subsequent legislation (Cooley on Const. Lim., 2d edit., 379). But if no such contract has, in point of fact, ever been made, then it is altogether beyond the scope of validating legislation to declare

that such contract has been made, and require its perform-
ance.   In such a case there is nothing to validate.   The act
of 1896 cannot, therefore, be regarded as an act passed in
pursuance of the authority conferred upon the General
Assembly by the ordinance of the Convention above
referred to.

Under this view of the case, we have not deemed it neces-
sary. or even proper, at this stage of the case, to consider any
of the other questions presented by the exceptions, as such
questions should and must be first determined in a regular
trial upon the merits.

The judgment of this Court is, that the order of the Cir-
cuit Judge dissolving the injunction be reversed upon the
grounds stated, and that the case be remanded to the Circuit
Court for trial on the merits, and that in the meantime the
injunction heretofore granted be continued until the further
order of the Court.